# Exhibit B
## Copy of Executed Prepetition Engagement Letter

ALVAREZ & MARSAL

600 Lexington Avenue, 6th Floor, New York, NY 10022
Phone: 212.759.4433  Fax: 212.759.5532
www.alvarezandmarsal.com

January 18, 2011

Allison Vulgamore
President and Chief Executive Officer
The Philadelphia Orchestra and
Peter Nero and The Philly Pops
260 S. Broad Street, 16th Floor
Philadelphia, PA 19102

Dear Ms. Vulgamore:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and The Philadelphia Orchestra Association and its subsidiaries and affiliates (jointly and severally, the "Association"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Association and A&M (the "Agreement").

1. Description of Services

    (a) A&M shall provide consulting services to the Association at the direction of the Association's President and Chief Executive Officer (the "Responsible Officer") and Board of Directors (the "Board") to assist the Association in its reorganization efforts. It is anticipated that A&M's activities shall include the following:

        (i) Assistance in evaluation of the Association's business plan and in preparation of a revised operating plan and cash flow forecast;

        (ii) In the event of a Bankruptcy filing, assistance with the administration of the Bankruptcy process;

        (iii) assistance in identification of cost reduction and operations improvement opportunities;

        (iv) assistance in the development and management of a 13-week cash flow forecast;

Alvarez & Marsal
North America, LLC

  (v)  other activities as are approved by you, the Responsible Officer or the Board and agreed to by A&M.

In rendering its services to the Association, A&M will report directly to the Responsible Officer and will make recommendations to and consult with the Responsible Officer and other senior officers as the Board or Responsible Officer direct.

  (b)  Joseph A. Bondi, Managing Director of A&M, will be responsible for the overall engagement. He will be assisted by other A&M personnel based on the scope of the work. In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates. Such affiliates are wholly owned by A&M's parent company and employees.

    A&M personnel providing services to the Association may also work with other A&M clients in conjunction with unrelated matters.

2.  <u>Information Provided by the Association and Forward Looking Statements</u>

The Association shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Association; and (ii) to furnish all material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Association that A&M reasonably request in connection with the services to be provided to the Association. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and all information that is furnished by or on behalf of the Association and otherwise reviewed by A&M in connection with the services performed for the Association. The Association acknowledges and agrees that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein.

You understand that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Association's operations, which may materially and adversely differ from those projections. In addition, A&M will be

relying on information provided by the Association in the preparation of those projections and other forward-looking statements.

3. Limitation of Duties

A&M makes no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal can be formulated for the Association (ii) any restructuring proposal or strategic alternative presented to the Board or Responsible Officer will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Association or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by the Association's creditors, and other constituents. Further, A&M does not assume any responsibility for the Association's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. A&M shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Board or Responsible Officer and only to the extent and in the manner authorized by and directed by the Board or Responsible Officer and agreed to by A&M.

4. Compensation

(a) A&M will receive fees based on the following discounted hourly rates:

| Level | Standard Rates | Discounted Rates[1] |
|---|---|---|
| Managing Director | $650 to $850 | $500 |
| Director | $450 to $650 | $375 |
| Associate | $350 to $450 | $265 |

Such rates shall be reviewed upon a Bankruptcy filing and are subject to adjustment annually at such time as A&M adjusts its rates generally.

(b) In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, messenger and telephone charges. All fees and

---

[1] These rates reflect a discount on A&M's standard rates in consideration of the specific circumstances surrounding the nature of the client. The POA is a not-for-profit organization that serves the City of Philadelphia. These rates are not reflective of A&M's customary and standard rates charged in any other case.

        expenses will be billed and payable on a monthly basis or, at A&M's discretion, more frequently.

(c)     The Association shall promptly remit to A&M a retainer in the amount of $50,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

5.     <u>Term</u>

The engagement will commence as of the date hereof and may be terminated by either party without cause by giving 30 days' written notice to the other party. A&M normally does not withdraw from an engagement unless the Association misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue to represent the Association, or unless other just cause exists. In the event of any such termination, any fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination). The Association may immediately terminate A&M's services hereunder at any time for Cause by giving written notice to A&M. Upon any such termination, the Association shall be relieved of all of its payment obligations under this Agreement, except for the payment of fees and expenses through the effective date of termination (including fees and expenses that accrued prior to but were invoiced subsequent to such termination) and its obligations under paragraphs 9 and 10. For purposes of this Agreement, "Cause" shall mean if A&M breaches any of its material obligations hereunder and does not cure such breach within 30 days of the Association having given written notice of such breach to A&M describing in reasonable detail the nature of the alleged breach. A&M shall be entitled to immediately terminate its services hereunder for Good Reason. For purposes of this Agreement, termination for "Good Reason" shall mean either its resignation caused by a breach by the Association of any of its material obligations under this Agreement that is not cured within 30 days of A&M having given written notice of such breach to the Association describing in reasonable detail the nature of the alleged breach or a filing of a petition under Chapter 11 of the United States Bankruptcy Code in respect of the Association unless within 45 days thereafter (or, if sooner, prior to the date on which a plan of reorganization is confirmed or the case is converted to one under Chapter 7), the Association has obtained judicial authorization to continue the engagement on the terms herein pursuant to an order which has become a final, nonappealable order.

6. <u>Relationship of the Parties</u>

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither A&M nor any of its personnel or agents is to be considered an employee or agent of the Association and the personnel and agents of A&M are not entitled to any of the benefits that the Association provides for the Association employees. The Association acknowledges that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7. <u>No Third Party Beneficiary</u>

The Association acknowledges that all advice (written or oral) provided by A&M to the Association in connection with this engagement is intended solely for the benefit and use of the Association (limited to its Board and management) in considering the matters to which this engagement relates. The Association agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

8. <u>Conflicts</u>

A&M is not currently aware of any relationship that would create a conflict of interest with the Association or those parties-in-interest of which you have made us aware. Because A&M is a consulting firm that serves clients on a national basis in numerous cases, both in and out of court, it is possible that A&M may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Association, including creditors of the Association. In the event you accept the terms of this engagement, A&M will not represent, and A&M has not represented, the interests of any such entities or people in connection with this matter. Each of the Companies acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Association. Each Association

represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

9.  Confidentiality / Non-Solicitation

    A&M shall keep as confidential all non-public information received from the Association in conjunction with this engagement, except: (i) as requested by the Association or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Association, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person"). Should the Association or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the party extending such offer equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Association acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Association breaches this provision. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10. Indemnification and Limitations on Liability

    The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

11. Miscellaneous

    This engagement letter (together with the attached indemnity provisions): (a) shall be governed and construed in accordance with the laws of the State of New

York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter hereof; and (c) may not be amended or modified except in writing executed by both parties hereto. The Association and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. The Association and A&M agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement. Notwithstanding anything herein to the contrary, A&M may reference or list the Association's name and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: _____
Joseph A. Bondi
Managing Director

Accepted and agreed:

The Philadelphia Orchestra Association

By: _____
Allison Vulgamore
President and Chief Executive Officer

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated January 18, 2011 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") by and between Alvarez & Marsal North America, LLC ("A&M") and The Philadelphia Orchestra Association (the "Association"), for services to be rendered to the Association by A&M.

A.      The Association agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Association also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Association for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Association for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Association further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.      These indemnification provisions shall be in addition to any liability which the Association may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal

(including administrative) process, the Association will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.  If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Association with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Association will not relieve the Association from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Association shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Association hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Association, the Association may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Association, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Association such counsel is unable to represent both the Indemnified Party and the Association, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Association shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Association will be liable for any settlement of any claim against an Indemnified Party made with the Association's written consent, which consent shall not be unreasonably withheld.

D.  In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Association, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable

for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.  In the event the Association and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Association, the Association shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Association will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.  Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.  The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Association, any other agreements, any vote of stockholders or disinterested directors of the Association, any applicable law or otherwise.

PHILADELPHIA ORCHESTRA
ASSOCIATION

By: _____
    President and CEO.

ALVAREZ & MARSAL NORTH AMERICA, LLC

By: _____