UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| The Philadelphia Orchestra Association | ) | Case No. 11-13098 (ELF) |
| | ) | |
| Academy of Music of Philadelphia, Inc. | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |

**MOTION OF THE PHILADELPHIA ORCHESTRA ASSOCIATION FOR ENTRY OF AN ORDER: (I) AUTHORIZING IT TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF BANKRUPTCY CODE, (II) AUTHORIZING IT TO ENTER INTO THE DEBTOR-IN-POSSESSION CREDIT AND SECURITY AGREEMENT, (III) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, AND (IV) GRANTING LIENS AND SUPER-PRIORITY CLAIMS TO DIP LENDER PURSUANT TO SECTION 364 OF BANKRUPTCY CODE AND MODIFYING THE AUTOMATIC STAY TO IMPLEMENT THE TERMS OF THE DIP ORDER**

The Philadelphia Orchestra Association (the "Debtor") respectfully represents:

**Bankruptcy Rule 4001 and Local Rule 1002-4 Concise Statement**

1. By this motion (this "Motion"), the Debtor requests (a) entry of an order (the "DIP Order") authorizing the Debtor to, among other things: (i) obtain loans in the aggregate principal amount of $3,100,000 (the "DIP Facility" or "DIP Loan"), which shall be structured as two separate advances, one for $2,000,000 and another for $1,100,000, pursuant to sections 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) enter into the Debtor-In-Possession Credit and Security Agreement and the agreements and instruments contemplated thereby (the "DIP Credit Agreement") and to perform such other and further acts as may be required in connection with the DIP Credit Agreement, (iii) use Cash Collateral, and (iv) grant super-priority claims to the Sun Federal Credit Union (the "DIP Lender") in accordance with the

7330584_5

DIP Credit Agreement documents and the DIP Order to secure any and all of the DIP Obligations (as hereinafter defined); (b) modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the DIP Lender to implement the terms of the DIP Order; and (c) in accordance with Rules 4001(b) and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), a hearing before this court (the "Bankruptcy Court") for the entry of the DIP Order to be held within fourteen (14) days from the date of this Motion.  A copy of the DIP Credit Agreement is attached hereto as **Exhibit A**.

  2. Material provisions of the DIP Credit Agreement are set forth in the following sections of the DIP Credit Agreement and/or the DIP Order.

  a. *Borrower*:  The Philadelphia Orchestra Association [DIP Credit Agreement, page 1]

  b. *DIP Lender*: Sun Federal Credit Union [DIP Credit Agreement, page 1]

  c. *DIP Facility Amount*:  The total loan of $3,100,000 to be made as loans on the Facility Effective Date and shall be structured as two separate advances; one for $2,000,000 and another for $1,100,000.  The obligations to repay the Loan and to pay interest thereon shall be evidenced by a promissory note of the Debtor to DIP Lender, in form and substance acceptable to DIP Lender [DIP Credit Agreement, Section 2. Amounts and Terms of Commitments and Loans (pages 7 and 8)]

  d. *Interest Rates*:  The Loan shall bear interest on the unpaid principal amount thereof from the date made until repaid and the interest rate shall be 7 ¼ % on the outstanding balances of the Loan owing to DIP Lender at the close of business for each day during each calendar month. [DIP Credit Agreement, 2.2 Interest on the Loan (page 8)].

  e. *Post-Default Interest*: Upon the occurrence and during the continuance of an Event of Default, all Obligations shall bear interest at the rate of 9 ¼ % per annum until paid.  Such interest shall be due and payable on demand. [DIP Credit Agreement, 2.2 Interest on the Loan (page 8)].

  f. *Computation of Interest*: Interest on the Loan shall be computed on the basis of a 360-day year. [DIP Credit Agreement, 2.2 Interest on Loan (page 8)]

2

7330584_5

g. *Payment of Interest*: Interest shall be payable in arrears, in immediately available funds, (i) on each Interest Payment Date applicable to the Loan; and (ii) upon any prepayment of the Loan, whether voluntary or mandatory, to the extent accrued on the amount being paid. [DIP Credit Agreement, 2.2 Interest on the Loan (pages 8-9)

h. *Administrative Fee*: The Debtor shall pay to DIP Lender on the Closing Date, for its sole account, an administrative fee in the amount of $15,500 in total for the Loans. [DIP Credit Agreement, 2.3 Fees (page 9)]

i. *Voluntary Prepayments of the Loan*: The Debtor may, upon prior notice given to DIP Lender, at any time and from time to time, prepay the Loan on any Business Day in whole or in part in an aggregate minimum amount of $50,000 and integral multiples of $50,000. [DIP Credit Agreement, 2.4 Repayments of Loans (page 9)]

j. *Mandatory Prepayments*: The Debtor shall from time to time repay the Loan to the extent necessary so that the outstanding principal Obligations shall not exceed the amount contemplated by the DIP Credit Agreement. [DIP Credit Agreement, 2.4 Repayments of Loans (page 9)]

k. *Repayment of Loan*: The Debtor agrees to repay in full all outstanding principal amounts of the Loan, and the Commitment shall automatically terminate and be permanently reduced to zero, on the Termination Date, which is the earliest of: (a) April 16, 2012; (b) if a plan of reorganization has been confirmed by order of the Bankruptcy Court, the earlier of (i) the effective date of such plan of reorganization or (ii) the sixtieth (60th) day after the date of entry of the confirmation order; (c) acceleration by DIP Lender of the Obligations due to the occurrence of an Event of Default; or (d) the indefeasible payment in full of al Obligations owing under the DIP Facility in accordance with the terms of the DIP Credit Agreement. [DIP Credit Agreement, 2.4 Repayments of Loans (page 9)]

l. *Financial Covenants*: The Debtor shall maintain an account (the "Deposit Account") with DIP Lender and at all times have an aggregate amount of cash and cash equivalents of not less than $250,000 in such Deposit Account. If the Debtor elects to draw the second advance, the minimum amount of cash and cash equivalents in the Deposit Account shall increase to $350,000.

m. *Carve-Outs*: The claims granted hereunder to the DIP Lender, the post-petition liens and any claims, security interests or liens ranking *pari passu* with or junior in priority to such claims of the DIP Lender shall be subject to payment of the Carve-Outs. As used in this Final Order, "Carve-Outs" shall mean (a) the payment of Allowed Professional Fees that were incurred prior to an Event of Default or the Termination Date (whether approved and paid before or after such Event of Default or the Termination Date); (b) the payment of Allowed Professional Fees that were incurred after an Event of Default or the Termination Date in an amount not to exceed $500,000, minus any retainers still being held

3

7330584_5

and available for application to such outstanding professional fees and expenses, provided that nothing herein shall be deemed a waiver of the rights of DIP Lender to object to any requests for allowance of any such fees or expenses; and (c) fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and to the Clerk of the Bankruptcy Court; provided, that nothing herein shall be deemed as a waiver of the rights of Lender to object to any requests for allowance of any fees or expenses.

n. *Allowed Professional Fees*: All fees of and expenses incurred by the professionals retained pursuant to Sections 327, 363, or 1103(a) of the Bankruptcy Code, by the Debtor and any Committee (as defined, any official committee of unsecured creditors appointed pursuant to Section 1102 of the Bankruptcy Code) in the Case provided for in the budgets (including, without limitation, a claims and notice agent) during the administration of the Case, in each case, as approved by the Bankruptcy Court. For the avoidance of doubt, the term "Allowed Professional Fees" does not include the fees and costs of professionals engaged by or for the benefit of Lender.

o. *Liens and Related Matters*: The Debtor shall not, directly or indirectly, create, incur, assume or permit to exist any liens on or with respect to the Collateral of any kind, whether now owned or hereafter acquired, except: (a) Liens granted under the Collateral Documents to Lender on the Collateral; (b) statutory Liens of landlords, banks (and rights of set off), of carriers, warehousemen, mechanics, repairmen, workmen and materialmen, and other Liens imposed by law (other than any such Lien imposed pursuant to Section 401 (a)(29) or 412(n) of the Internal Revenue Code or by ERISA), in each case incurred in the ordinary course of business (i) for amounts not yet overdue; or (ii) for amounts that are overdue and that are being diligently contested in good faith by appropriate proceedings, or, with respect to the Debtor, as to which payment and enforcement is stayed under the Bankruptcy Code or pursuant to orders of the Bankruptcy Court; (c) Liens for Taxes not yet due and payable or are diligently contested in good faith by appropriate proceedings promptly instituted and diligently conducted; (d) Liens incurred in the ordinary course of business in connection with workers' compensation, unemployment insurance and other types of social security, or to secure the performance of tenders, statutory obligations, surety and appeal bonds, bids, leases, government contracts, trade contracts, performance and return of money bonds and other similar obligations; (e) easements, rights of way, restrictions, encroachments, and other minor defects or irregularities in title, in each case which do not and will not interfere in any material respect with the value or use of the property to which such Lien is attached; (f) licenses of patents, trademarks and other intellectual property rights granted by the Debtor in the ordinary course of business consistent with past practice and not interfering in any respect with the ordinary conduct of the business and not adversely affecting the value of such intellectual property; and (g) Liens existing on the date hereof.

p. *Use of Proceeds*: The proceeds of the Loan shall be used solely (i) in accordance with the Final Order, (ii) to fund working capital requirements, operating

4

7330584_5

expenses and capital expenditures of the Debtor in the ordinary course of the Debtor's business, including Allowed Professional Fees during administration of the bankruptcy case, (iii) to fund the payment of interest accrued on the Loan, and (iv) to pay the fees and expenses of DIP Lender relating to the DIP Facility and the case, including, without limitation, its diligence and administrative fees and costs, and reasonable attorneys', appraisers' and other professional advisors' and consultants' fees and costs. [DIP Credit Agreement, 2.5 Use of Proceeds (page 10)]

q. *Effectiveness*: The DIP Credit Agreement shall not become effective and the DIP Lender shall not be obligated to make the Loan unless certain conditions, including (i) the receipt of specific documentation, (ii) entry of a final order within thirty (30) days following entry of an order approving the DIP Facility, (iii) the Debtor paid to DIP Lender certain fees, (iv) the DIP Lender shall have received first priority mortgages on the Subject Real Property, (v) DIP Lender shall have received evidence of hazard and liability insurance and (vi) certain conditions precedent must have occurred. [DIP Credit Agreement, Section 3. Conditions to Loan (page 10)]

r. *Conditions Precedent*: After giving effect to the Loan: (a) there exists no Default or Event of Default; (b) DIP Lender shall have received from the Debtor a Notice of Borrowing and all of the statements contained in such notice shall be true and correct; and (c) DIP Lender shall have received the Thirteen-Week Forecast most recently required to have been delivered in form and substance satisfactory to DIP Lender. [DIP Credit Agreement, 3.1 Effectiveness (page 11)]

s. *Events of Default*: Customary events of default including, failure to make payments when due; breach of certain covenants; breach of warranty; other defaults under Loan Documents; other indebtedness, including default in payment or performance of any obligation to another person or entity in an amount in excess of $100,000; dissolution or cessation of business; dismissal of the bankruptcy case or conversion to a chapter 7 case; appointment of a chapter 11 trustee; appointment of an examiner with enlarged powers relating to the operation of the business of the Debtor; Final Order reversed, stayed or rescinded or amended or supplemented by the Court without written consent of the DIP Lender; attempts by the Debtor to obtain an order of the Bankruptcy Court or other judgment, which would invalidate, reduce or otherwise impair DIP Lender's claims, liens or line or claim priority status; an order being entered granting relief from the automatic stay permitting foreclosure of any assets of the Debtor in excess of $100,000; filing of pleadings by the Debtor effecting the Liens or super-priority claim status of DIP Lender's claims, invalidation or subordination of Liens or the super-priority claim status, the confirmation of a plan which does not contain a provision for pre-payment in full in cash of all obligations of the Debtor to DIP Lender; filing of a motion by the Debtor requesting, or entry of an order granting, any super-priority claim which is senior or *pari passu* with the DIP Lender's claims.

5

t. **Grant of Security Interest**: The Debtor hereby grants to DIP Lender, a security interest in the following property now owned or at any time hereafter acquired by the Debtor or in which the Debtor now has or at any time in the future may acquire any right, title or interest (collectively, the "Collateral"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations: (a) all Equipment (including musical instruments); (b) all Intellectual Property; (c) the Subject Real Property; (d) all books and records pertaining to the Collateral; (e) all assets (other than the Excluded Assets), including but not limited to general intangibles, negotiable collateral, the musical library (which shall include sheet music) and all property listed on Schedules A and B of the Debtor's bankruptcy schedules and any amendments thereto; and (f) to the extent not otherwise included, all proceeds of any and all of the foregoing.

u. **Representations and Warranties Relating to Collateral**: The Debtor represents and certifies that: (a) the Debtor's jurisdiction of organization and the location of the Debtor's chief executive office or sole place of business are specified on Schedule 9.1(b) to the DIP Credit Facility; (b) the Equipment (other than any Equipment in transit) is kept at the locations listed on Schedule 9.1(b) to the DIP Credit Facility; and (A) Schedule 9.1(b) lists all registered Intellectual Property and all other material Intellectual Property owned by the Debtor in its own name on the date of the DIP Credit Agreement, (B) on the date of the DIP Credit Agreement, all material Intellectual Property of the Debtor described on Schedule 9.1(b) is valid, subsisting, unexpired and enforceable, has not been abandoned and does not infringe on the intellectual property rights of any other Person, (C) except as set forth in Schedule 9.1(b), on the date hereof, none of the Intellectual Property is the subject of any licensing or franchise agreement pursuant to which the Debtor is the licensor or franchisor, and (D) no action or proceeding is pending, or, to the knowledge of the Debtor, threatened, on the date hereof seeking to limit, cancel or question the validity of any material Intellectual Property or the Debtor's ownership interest therein, or which, if adversely determined, would have a material and adverse effect on the value of such Intellectual Property.

v. **Covenants Relating to Collateral**: The Debtor shall, among other things, pay and discharge or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all taxes, assessments and governmental charges or levies imposed upon the Collateral. The Debtor shall also maintain the security interest created by this Agreement as a perfected security interest having at least the priority described in the Final Order and shall defend such security interest against the claims and demands of all Persons whomsoever.

w. **No Discharge; Survival of Claims**: The Debtor agrees that to the extent its Obligations under the DIP Credit Agreement are not satisfied in full, (a) its Obligations shall not be discharged by the entry of a confirmation order (and the Debtor, pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge) and (b) the super-priority claim granted to DIP Lender

6

7330584_5

    pursuant to the Final Order and the Liens granted to DIP Lender pursuant to the Final Order shall not be affected in any manner by the entry of a confirmation order. ***Superpriority*:** Agreement shall constitute allowed administrative expenses in the Bankruptcy Case, and pursuant to section 364(c)(1) of the Bankruptcy Code, shall have priority over any and all administrative expenses of any kind and nature specified in section 503(b) or 507(b) of the Bankruptcy Code, subject only to the prior payment of the Agreed Administrative Expense Priorities, as and to the extent set forth in the Final Order or any subsequent order of the Bankruptcy Court.***Remedies*:** Upon the occurrence of an Event of Default, the DIP Lender shall have customary remedies. The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies under the DIP Documentation and the Final Order.

 z. ***Expenses*:** The Debtor agrees to pay or reimburse DIP Lender for all out-of-pocket costs and expenses (including but not limited to attorneys' fees and disbursements) DIP Lender may pay or incur in connection with the preparation, negotiation and review of the DIP Credit Agreement and the other Loan Documents. All obligations provided for in <u>Section 5.9</u> of the DIP Credit Agreement shall survive any termination of the DIP Credit Agreement or the Commitment and the repayment of the Obligations.

## Jurisdiction

3. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules 1002-4, 2002-1, and 9014-3 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "<u>Local Rules</u>").

## Background

6. On April 16, 2011 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief with the Court under chapter 11 of title 11 of the Bankruptcy Code. The Debtor is

7

operating its organization and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases"). On May 4, 2011, the United States Trustee filed its *Motion to Appoint Creditors' Committee* [*Docket No. 95*]. The Debtor's bankruptcy case has been procedurally consolidated with that of its affiliated debtor, Academy of Music of Philadelphia, Inc., and the cases are being jointly administered.

7. The factual background relating to the commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Richard B. Worley In Support of First Day Motions* [*Docket No. 12*] filed on April 16, 2011 (the "First Day Declaration"), and incorporated herein by reference.

8. These Chapter 11 Cases are balance sheet and operational restructuring cases. The Debtor is a non-profit organization whose revenues are generated through endowments, charitable contributions and sales of subscriptions and tickets to events presented by the Debtor. The Debtor's revenues and going concern value have steadily declined over the past several years like countless other performing arts enterprises. The Debtor filed its bankruptcy case to streamline operations that have become uneconomical and to restructure leases, contracts and other operational agreements.

**Relief Requested**

9. The Debtor requests that the Court authorize it to obtain senior secured, superpriority postpetition financing in the aggregate not to exceed $3.1 million pursuant to the terms of this Motion, the DIP Credit Agreement and the DIP Order. The proposed financing will be provided by the DIP Lender.

10. The Debtor requests that the Court authorize it to: (i) obtain loans in the aggregate principal amount of $3,100,000, which shall be structured as two separate advances, one for

$2,000,000 and another for $1,100,000, pursuant to the terms of the DIP Credit Agreement; (ii) enter into the DIP Credit Agreement and the agreements and instruments contemplated thereby and to perform such other and further acts as may be required in connection with the DIP Credit Agreement, (iii) use Cash Collateral and (iv) grant superpriority claims to the DIP Lender in accordance with the DIP Credit Agreement documents and the DIP Order to secure any and all of the DIP Obligations; and modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the DIP Lender to implement the terms of the DIP Order.

### The Debtor's Current DIP Proposal

11. Since the commencement of these cases, the Debtor has successfully managed cash so as to delay the need for the Debtor to access funds from a DIP facility.

12. The Debtor has also been in discussions with the DIP Lender to assess the need and possibilities for DIP financing.

13. The DIP Lender has offered to provide the Debtor with a DIP Facility and requires superior liens on the assets referenced in the DIP Credit Agreement.

14. The Debtor has reasonably determined that the DIP Facility offered by the DIP Lender provides terms most favorable to the Debtor and its estate.

15. In the sound exercise of its business judgment and fiduciary duties, the Debtor has determined to proceed under the DIP Facility offered by the DIP Lender.

### The DIP Facility Should Be Authorized

16. Approval of the DIP Facility will provide the Debtor with immediate and ongoing access to borrowing availability to pay its current and ongoing operating expenses, including post-petition wages and salaries and vendor costs. Unless these expenses are paid, the Debtor will be forced to cease operations, which would likely: (i) result in irreparable harm to its

organization and (ii) jeopardize the Debtor's ability to reorganize and maximize value for all interested parties.  The credit provided under the DIP Credit Agreement will enable the Debtor to continue to satisfy its vendors, service its customers, pay its employees and operate its organization in the ordinary course and in an orderly and reasonable manner to preserve the value of its estate for the benefit of the Debtor's creditors and the community at large.  The availability of credit under the DIP Credit Agreement will provide confidence to the Debtor's patrons and creditors that will enable and encourage them to continue their relationships with the Debtor.  Finally, the implementation of the DIP Credit Agreement will be viewed favorably by the Debtor's vendors, employees, musicians, and customers, and promote a successful reorganization.  Accordingly, the timely approval of the relief requested herein is imperative.

      17.    Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt:  (a) with priority over any and all administrative expenses, as specified in section 503(b) or 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or (c) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364.  The Debtors propose to obtain the financing set forth in the DIP Credit Agreement by providing, inter alia, superpriority claims, security interests and liens pursuant to section 364(c) and section 364(d) of the Bankruptcy Code.

      18.    The Debtor's liquidity needs can be satisfied only if the Debtor is authorized to borrow under the DIP Facility and to use such proceeds to fund its operations.  The Debtor has been unable to procure sufficient financing in the form of unsecured credit allowable under

section 503(b)(1), as an administrative expense under section 364(a) or (b) or in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1).

19. The Debtor believes it would not be able to obtain postpetition financing or other financial accommodations from any alternative DIP Lender or on more favorable terms and conditions than those for which approval is sought herein.

20. Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Funding Sys. Asset Mgmt. Corp.*, 72 B.R. 87 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985).

21. Due to the nature of the Debtor's business, the vast majority of its assets are its musicians, as well as property that is subject to donor and state law restrictions as to use. The Debtor has been unable to procure the funding required to meet its ongoing operational needs absent granting the proposed superpriority claims and liens on certain of its assets as set forth in the DIP Credit Agreement. The Debtor submits that the circumstances of this case require the Debtor to obtain financing pursuant to section 364(c) and section 364(d) of the Bankruptcy Code and, accordingly, the DIP Credit Agreement reflects the exercise of its sound business judgment.

7330584_5

22. The terms and conditions of the DIP Credit Agreement are fair and reasonable and were negotiated extensively by well-represented parties in good faith and at arms' length. Accordingly, the DIP Lender and all obligations incurred under the DIP Credit Agreement should be accorded the benefits of section 364(e) of the Bankruptcy Code.

**The Automatic Stay Should Be Modified on a Limited Basis**

23. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to: (i) grant the security interests, liens and superpriority claims described above with respect to the DIP Lender and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; and (ii) implement the terms of the proposed DIP Order.

24. Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

**Notice**

25. This Motion has been served upon (a) the Core Group; (b) the 2002 List, each as defined by the Court's *Order Establishing Certain Notice, Case Management and Administrative Procedures* [*Docket No. 36*] (the "Case Management Order"); and (c) counsel to the DIP Lender. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit B**; and grant such other and further relief as is just and proper.

7330584_5

Dated: September 28, 2011
       Philadelphia, Pennsylvania

    /s/ Lawrence G. McMichael
**DILWORTH PAXSON LLP**
Lawrence G. McMichael
Anne M. Aaronson
Catherine G. Pappas
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200

*Counsel for Debtors and Debtors in Possession The Philadelphia Orchestra Association and Academy of Music of Philadelphia, Inc.*

13

7330584_5