# **EXHIBIT B**

[Proposed Order]

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| The Philadelphia Orchestra Association | ) Case No. 11-13098 (ELF) |
| | ) |
| Academy of Music of Philadelphia, Inc. | ) Jointly Administered |
| | ) |
| Debtors. | ) |

**FINAL ORDER (I) AUTHORIZING THE PHILADELPHIA ORCHESTRA ASSOCIATION TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF BANKRUPTCY CODE, (II) AUTHORIZING IT TO ENTER INTO THE DEBTOR-IN-POSSESSION CREDIT AND SECURITY AGREEMENT, (III) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPER-PRIORITY CLAIMS TO DIP LENDER PURSUANT TO SECTION 364 OF BANKRUPTCY CODE; AND MODIFYING THE AUTOMATIC STAY TO IMPLEMENT THE TERMS OF THIS ORDER**

Upon the Motion (the "Motion") of The Philadelphia Orchestra Association (the "Debtor") for (a) the entry of an order (the "DIP Order") authorizing it to, among other things: (i) obtain loans in the aggregate principal amount of $3,100,000 (the "DIP Facility" or "DIP Loan"), which shall be structured as two separate advances, one for $2,000,000 and another for $1,100,000, pursuant to sections 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) enter into the Debtor-In-Possession Credit and Security Agreement and the agreements and instruments contemplated thereby (the "DIP Credit Agreement") and to perform such other and further acts as may be required in connection with the DIP Credit Agreement, (iii) use Cash Collateral; (iv) and grant super-priority claims to Sun Federal Credit Union (the "DIP Lender") in accordance with the DIP Credit Agreement documents and the DIP Order to secure any and all of the DIP Obligations (as defined in the DIP Credit Agreement); and (b) modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the DIP Lender to implement the terms of the DIP

7888017_5

Order; and after notice and a hearing, in accordance with Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and good and sufficient cause appearing therefore,

**THE COURT HEREBY FINDS:**

A. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Notice of the relief sought by the Motion was delivered via facsimile, electronic mail, and/or overnight delivery to the following: (a) the Core Group; (b) the 2002 List, each as defined by the Court's *Order Establishing Certain Notice, Case Management and Administrative Procedures* [*Docket No. 36*] (the "Case Management Order"); and (c) counsel to the DIP Lender. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary. Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Federal Rule of Bankruptcy Procedure 4001 in all respects for purposes of entering this Final Order.

C. An immediate and critical need exists for the Debtor to obtain funds to continue the operation of its businesses. The Debtor is unable to obtain the required funds (i) in the forms of (a) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (b) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (c) unsecured debt having the priority afforded by section 364(c)(l) of the Bankruptcy Code or (d) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code or (ii) on terms more favorable than those offered by the DIP Lender under the DIP Credit Agreement filed with the

3

Court at Docket No. ___, the Final Order and all other agreements, documents, notes or instruments delivered pursuant hereto or thereto or in connection herewith or therewith.

        D.      The Debtor has requested that, pursuant to the terms of the DIP Credit Agreement, the DIP Lender make loans and advances and provide other financial accommodations to the Debtor to be used by the Debtor solely in accordance with the terms of the DIP Credit Agreement.  The ability of the Debtor to continue its business and reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtor obtaining such financing.  The DIP Lender is willing to extend the DIP Facility on a superpriority and first priority secured basis, as more particularly described herein, pursuant to the terms and conditions of the DIP Credit Agreement.  The Debtor's entry into the DIP Credit Agreement is fair and reasonable and is a sound, prudent exercise of its business judgment consistent with its fiduciary duties.  The DIP Credit Agreement was negotiated at arm's length and in good faith between the Debtor and the DIP Lender and the loans and advances provided for in the DIP Credit Agreement constitute reasonably equivalent value and fair consideration.  Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's organization, the management and preservation of its assets and properties, the operation of its business and the Debtor's estate and is in the best interests of the Debtor, its estates and creditors.

        E.      The DIP Lender is extending the DIP Facility to the Debtor pursuant to the terms of this Final Order in good faith, and the DIP Lender is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

7888017_5

F. It is in the best interests of the Debtor's estates that it be allowed to finance its operations on a final basis under the terms and conditions set forth herein and in the DIP Credit Agreement. Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Final Order.

G. The Post-petition Liens (as defined in the DIP Credit Agreement) granted pursuant to this Final Order to the DIP Lender, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, pre-petition security interest or lien in the property of the Debtor's estate, and/or (ii) the holders of such valid, perfected, pre-petition security interests and liens are being adequately protected.

H. Good cause has been shown for the immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b) and (c). In particular, the permission granted herein for the Debtor to execute the DIP Credit Agreement is necessary to avoid immediate and irreparable harm to the Debtor and its estates. Entry of this Final Order is in the best interest of the Debtor, its estates and creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

1. **Motion Granted.** The Motion is granted on a Final basis on the terms and conditions set forth herein. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Final Order shall become effective immediately upon its entry. To the extent the terms of the other Post-petition Financing Documents differ in any material respect from the terms of this Final Order, this Final Order shall control.

5

2.　**DIP Credit Agreement.**　The Debtor is hereby authorized to (i) obtain loans in the aggregate principal amount of $3,100,000 (the "DIP Facility" or "DIP Loan"), which shall be structured as two separate advances, one for $2,000,000 and another for $1,100,000, pursuant to sections 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) enter into the Debtor-In-Possession Credit and Security Agreement and the agreements and instruments contemplated thereby (the "DIP Credit Agreement") and to perform such other and further acts as may be required in connection with the DIP Credit Agreement, (iii) use Cash Collateral; and (iv) grant super-priority claims to Sun Federal Credit Union in accordance with the DIP Credit Agreement documents and the DIP Order to secure any and all of the DIP Obligations (as defined in the DIP Credit Agreement).  The Debtor is also authorized to modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the DIP Lender to implement the terms of the DIP Order.

3.　**Use of DIP Lender Funds.**　The Debtor shall use the loans or advances made under, or in connection with, the DIP Credit Agreement solely as provided in this Final Order and in the DIP Credit Agreement.  The DIP Loan shall not, directly or indirectly, be used to pay expenses of the Debtor or otherwise disbursed except (a) to fund working capital requirements of the Debtor, operating expenses of the Debtor; (b) to fund fees and expenses of professionals of the Debtor, which have been allowed by the Court; and (c) to pay fees and expenses of the DIP Lender related to the DIP Facility and the chapter 11 cases, including reasonable attorneys' fees.

4.　**Interest.**　Interest on the DIP Loans shall be secured in the manner provided herein, and shall accrue at the rates (including any default rates) and be paid in accordance with the terms and provisions of the DIP Credit Agreement.

7888017_5

5. **Priority of Liens.**  Except for the Carve-Outs or as otherwise provided in the Collateral Documents, the Debtor shall not, nor shall it apply to the Bankruptcy Court for authority to, incur, create, assume, suffer to exist or permit any other super-priority claim or Lien which is *pari passu* with or senior to the claims of DIP Lender granted pursuant to the DIP Credit Agreement or other loan documents, other than, with respect to post-petition assets of the Debtor, or liens permitted under Section 6.2 of the DIP Credit Agreement.

6. **Carve-Outs.**  The claims granted hereunder to the DIP Lender, the post-petition liens and any claims, security interests or liens ranking *pari passu* with or junior in priority to such claims of the DIP Lender shall be subject to payment of the Carve-Outs.  As used in this Final Order, "Carve-Outs" shall mean (a) the payment of Allowed Professional Fees that were incurred prior to an Event of Default or the Termination Date (whether approved and paid before or after such Event of Default or the Termination Date); (b) the payment of Allowed Professional Fees that were incurred after an Event of Default or the Termination Date in an amount not to exceed $500,000, minus any retainers still being held and available for application to such outstanding professional fees and expenses, provided that nothing herein shall be deemed a waiver of the rights of DIP Lender to object to any requests for allowance of any such fees or expenses; and (c) fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and to the Clerk of the Bankruptcy Court; provided, that nothing herein shall be deemed as a waiver of the rights of Lender to object to any requests for allowance of any fees or expenses.

7. **Allowed Professional Fees:** All fees of and expenses incurred by the professionals retained pursuant to Sections 327, 363, or 1103(a) of the Bankruptcy Code, by the Debtor and any Committee (as defined, any official committee of unsecured creditors appointed pursuant to Section 1102 of the Bankruptcy Code) in the Case provided for in the budgets

7

(including, without limitation, a claims and notice agent) during the administration of the Case, in each case, as approved by the Bankruptcy Court.  For the avoidance of doubt, the term "Allowed Professional Fees" does not include the fees and costs of professionals engaged by or for the benefit of Lender.

8. **Liens and Related Matters.**  The Debtor shall not, directly or indirectly, create, incur, assume or permit to exist any liens on or with respect to the Collateral (as defined in the DIP Credit Agreement) of any kind, whether now owned or hereafter acquired, except: (a) Liens granted under the Collateral Documents to Lender on the Collateral; (b) statutory Liens of landlords, banks (and rights of set off), of carriers, warehousemen, mechanics, repairmen, workmen and materialmen, and other Liens imposed by law (other than any such Lien imposed pursuant to Section 401 (a)(29) or 412(n) of the Internal Revenue Code or by ERISA), in each case incurred in the ordinary course of business (i) for amounts not yet overdue; or (ii) for amounts that are overdue and that are being diligently contested in good faith by appropriate proceedings, or, with respect to the Debtor, as to which payment and enforcement is stayed under the Bankruptcy Code or pursuant to orders of the Bankruptcy Court; (c) Liens for Taxes not yet due and payable or are diligently contested in good faith by appropriate proceedings promptly instituted and diligently conducted; (d) Liens incurred in the ordinary course of business in connection with workers' compensation, unemployment insurance and other types of social security, or to secure the performance of tenders, statutory obligations, surety and appeal bonds, bids, leases, government contracts, trade contracts, performance and return of money bonds and other similar obligations; (e) easements, rights of way, restrictions, encroachments, and other minor defects or irregularities in title, in each case which do not and will not interfere in any material respect with the value or use of the property to which such Lien is attached; (f) licenses

8

of patents, trademarks and other intellectual property rights granted by the Debtor in the ordinary course of business consistent with past practice and not interfering in any respect with the ordinary conduct of the business and not adversely affecting the value of such intellectual property; and (g) Liens existing on the date hereof.

9.  **Administrative Fee.**  The Debtor shall pay to Lender on the Closing Date, for its sole account, an administrative fee in the amount of $15,500 in total for the Loans. [DIP Credit Agreement, 2.3 Fees (page 9)]

10.  **Financial Covenants.**  The Debtor shall maintain an account (the "Deposit Account") with DIP Lender and at all times have an aggregate amount of cash and cash equivalents of not less than $250,000 in such Deposit Account.  If the Debtor elects to draw the second Business Line of Credit, the minimum amount of cash and cash equivalents in the Deposit Account shall increase to $350,000.

11.  **Events of Default.**  Customary events of default including, failure to make payments when due; breach of certain covenants; breach of warranty; other defaults under Loan Documents; other indebtedness, including default in payment or performance of any obligation to another person or entity in an amount in excess of $100,000; dissolution or cessation of business; dismissal of the bankruptcy case or conversion to a chapter 7 case; appointment of a chapter 11 trustee; appointment of an examiner with enlarged powers relating to the operation of the business of the Debtor; Final Order reversed, stayed or rescinded or amended or supplemented by the Court without written consent of the Lender; attempts by the Debtor to obtain an order of the Bankruptcy Court or other judgment, which would invalidate, reduce or otherwise impair Lender's claims, liens or line or claim priority status; an order being entered granting relief from the automatic stay permitting foreclosure of any assets of the Debtor in

9

excess of $100,000; filing of pleadings by the Debtor effecting the Liens or super-priority claim status of Lender's claims, invalidation or subordination of Liens or the super-priority claim status, the confirmation of a plan which does not contain a provision for pre-payment in full in cash of all obligations of the Debtor to Lender; filing of a motion by the Debtor requesting, or entry of an order granting, any super-priority claim which is senior or *pari passu* with the DIP Lender's claims.

12. **Representations and Warranties Relating to Collateral.** The Debtor represents and certifies that: (a) the Debtor's jurisdiction of organization and the location of the Debtor's chief executive office or sole place of business are specified on Schedule 9.1(b) to the DIP Credit Facility; (b) the Equipment (other than any Equipment in transit) is kept at the locations listed on Schedule 9.1(b) to the DIP Credit Facility; and (A) Schedule 9.1(b) lists all registered Intellectual Property and all other material Intellectual Property owned by the Debtor in its own name on the date of the DIP Credit Agreement, (B) on the date of the DIP Credit Agreement, all material Intellectual Property of the Debtor described on Schedule 9.1(b) is valid, subsisting, unexpired and enforceable, has not been abandoned and does not infringe on the intellectual property rights of any other Person, (C) except as set forth in Schedule 9.1(b), on the date hereof, none of the Intellectual Property is the subject of any licensing or franchise agreement pursuant to which the Debtor is the licensor or franchisor, and (D) no action or proceeding is pending, or, to the knowledge of the Debtor, threatened, on the date hereof seeking to limit, cancel or question the validity of any material Intellectual Property or the Debtor's ownership interest therein, or which, if adversely determined, would have a material and adverse effect on the value of such Intellectual Property.

10

7888017_5

Dated: _____, 2011

                                         The Honorable Eric L. Frank
                                         United States Bankruptcy Judge

7888017_5