UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>The Philadelphia Orchestra Association, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 11-13098 (ELF)<br><br>Jointly Administered |

**LIMITED OBJECTION OF THE ANNENBERG FOUNDATION TO MOTION
OF THE PHILADELPHIA ORCHESTRA ASSOCIATION FOR ENTRY
OF AN ORDER: (I) AUTHORIZING IT TO OBTAIN POST-PETITION
FINANCING PURSUANT TO SECTIONS 363 AND 364 OF BANKRUPTCY CODE,
(II) AUTHORIZING IT TO ENTER INTO THE DEBTOR-IN-POSSESSION
CREDIT AND SECURITY AGREEMENT, (III) AUTHORIZING USE OF
CASH COLLATERAL PURSUANT TO SECTION 363 OF BANKRUPTCY CODE,
AND (IV) GRANTING LIENS AND SUPER-PRIORITY CLAIMS TO DIP LENDER
PURSUANT TO SECTION 364 OF BANKRUPTCY CODE AND MODIFYING
THE AUTOMATIC STAY TO IMPLEMENT THE TERMS OF THE DIP ORDER**

The Annenberg Foundation (the "**Foundation**"), by and through its undersigned counsel, respectfully submits this limited objection (the "**Limited Objection**") to the *Motion of the Philadelphia Orchestra Association for Entry of an Order: (i) Authorizing it to Obtain Post-Petition Financing Pursuant to Section 363 and 364 of Bankruptcy Code, (ii) Authorizing it to Enter into the Debtor-in-Possession Credit and Security Agreement, (iii) Authorizing Use of Cash Collateral Pursuant to Section 363 of Bankruptcy Code, and (iv) Granting Liens and Super-Priority Claims to DIP Lender Pursuant to Section 364 of Bankruptcy Code and Modifying the Automatic Stay to Implement the Terms of the DIP Order*, dated September 28,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are The Philadelphia Orchestra Association (2289) and Academy of Music of Philadelphia, Inc. (1159).

2011 [Docket No. 426] (the "**Motion**"),[2] filed by The Philadelphia Orchestra Association (the "**Orchestra**", and together with its affiliated debtors and debtors-in-possession, the "**Debtors**"). In support of the Limited Objection, the Foundation states as follows:

## BACKGROUND

1. On April 16, 2011 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their organizations and managing their property as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2. On May 4, 2011, the United States Trustee for the Eastern District of Pennsylvania appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

3. Prior to the Debtors' bankruptcies, on September 15, 2003, the Foundation and the Orchestra entered into the Philadelphia Orchestra Endowment Grant, dated September 15, 2003, as amended pursuant to various letter agreements (the "**Grant Agreement**"), by which the Foundation agreed to provide the Orchestra with a $50 million grant (the "**Funds**"). A copy of the Grant Agreement is attached hereto as Exhibit A.

4. The Grant Agreement provides, among other things, that "[t]he Orchestra shall not commingle the Funds with any other funds of the Orchestra . . . [and that] the Funds shall always be referred to in the books and records of the Orchestra as the 'Annenberg Endowment Funds.'" *See* Grant Agreement at ¶ 8. The Grant Agreement further provides that "no third party nor any of the Orchestra's creditors or any trustee in bankruptcy shall have any right or claim to

---

[2] Capitalized terms used herein without definition shall have the meaning given to them in the Motion.

the Funds or the proceeds or any part thereof by any purported assignments or transfer at any time.  No other party may rely upon the terms and conditions of these Funds."  Grant Agreement at ¶ 17.  Finally, the Grant Agreement expressly provides that "[t]he Orchestra recognizes that the Endowment Grants are being made to it solely for the purposes set forth [in the Grant Agreement."  Grant Agreement at ¶ 18.  Thus, the Grant Agreement goes to great lengths to protect the Funds and have them treated as separate and apart from any of the Orchestra's property.  Accordingly, the Undisbursed Funds do not constitute property of the Orchestra's bankruptcy estate under section 541 of the Bankruptcy Code.

5.  The Foundation made the Funds available to the Orchestra as promised under the Grant Agreement.  Upon information and belief, the aggregate amount of $54,521,614.50 of the Funds, including accrued interest thereon, has not yet been disbursed to the Orchestra pursuant to the Grant Agreement, and is being held in the Foundation's name in a restricted account established by the Debtors (the "**Undisbursed Funds**").[3]

## LIMITED OBJECTION

6.  In the Motion, and pursuant to the DIP Credit Agreement, the Orchestra seeks to, among other things, grant the DIP Lender a security interest in, *inter alia*, "all assets (other than the Excluded Assets), including but not limited to general intangibles, negotiable collateral, the musical library (which shall include sheet music) and all property listed on Schedules A and B of the [Orchestra]'s bankruptcy schedules and any amendments thereto."  DIP Credit Agreement at ¶ 9.1(a)(v).

---

[3] This figure is derived from the Monthly Operating Report for August 2011 [Docket No. 457] (the "**MOR**"), which lists the balance of account number 20209 as $54,521,614.50 as of August 31, 2011.  *See* MOR at p.5.  The Cash Management Motion (as defined below) lists the "Philadelphia Orchestra Association – Annenberg Pool" under account number 20209.

7.       The DIP Credit Agreement defines "Excluded Assets" to include "all temporarily and permanently restricted assets, either now held or subsequently acquired, of [the Orchestra], . . . identified as restricted on Schedules A and B of [the Orchestra]'s bankruptcy schedules and any amendments thereto."  DIP Credit Agreement at ¶ 1.1.  In turn, Schedule B of the Orchestra's *Schedules of Assets and Liabilities*, dated June 15, 2011 [Docket No. 187] (the "**Schedules**"), includes an entry for "Restricted Endowment Accounts."  *See* Schedules at p.13.

8.       Thus, pursuant to the terms of DIP Credit Agreement and the Motion, the Orchestra does not seek to grant the DIP Lender a security interest in any restricted assets, including those identified as restricted in Schedule B in the Orchestra's Schedules, such as the "Restricted Endowment Accounts."  However, the Orchestra does not provide any information in the Schedules or otherwise about which specific accounts, including whether the Undisbursed Funds, are considered by the Debtors to be "Restricted Endowment Accounts" such that they would be considered "Excluded Assets" under the DIP Credit Agreement.

9.       The Grant Agreement makes abundantly clear that the Funds, whether disbursed or undisbursed, cannot be used by the Orchestra for any purpose other than the limited purpose for which they were provided under the Grant Agreement.  *See* Grant Agreement at ¶ 18.  Therefore, the Grant Agreement makes clear that the Undisbursed Funds are and should be considered restricted.[4]   Moreover, the Debtors acknowledge in the *Declaration of Richard*

---

[4] In fact, the Undisbursed Funds provided by the Foundation to the Orchestra under the Grant Agreement are not just restricted, but are not property of the Debtors' estates at all. *See supra* at ¶ 4. In the *Motion of the Debtors for Entry of an Order: (A) Authorizing the Debtors to (i) Continue Cash Management System, (ii) Maintain Existing Bank Accounts and Business Forms and (iii) Maintain Existing Investment Practices; and (B) Granting Post-Petition Intercompany Claims Administrative Expense Priority*, dated April 16, 2011 [Docket No. 10] (the "**Cash Management Motion**"), the Debtors admit that the restricted endowment funds in their endowment investment accounts – listed in Exhibit C to the Cash Management Motion -- (footnote continued)

*Worley in Support of First Day Motions* [Docket No. 12] (the "**First Day Declaration**") that "the Debtors' remaining endowment funds can only be used for designated purposes . . . [and], [b]ecause these designations are donor-imposed and legally binding, the Debtors are not permitted to use these remaining funds to support general operations and other liabilities." *See* First Day Declaration at ¶ 25. Thus, the Debtors themselves admit that the Orchestra's endowment funds, including the Undisbursed Funds, are, at the very least, restricted.

10.  Pursuant to the terms of DIP Credit Agreement and the Motion, the Orchestra does not appear to grant the DIP Lender a security interest in the Undisbursed Funds and the Undisbursed Funds should qualify as "Excluded Assets". However, the DIP Credit Agreement refers to the Schedules for the definition of Excluded Assets, and the Schedules themselves do not specify which endowment funds are considered by the Debtors to be restricted. As a result, the Debtors have failed to adequately specify which endowment funds are "Excluded Assets" such that they are excluded from the DIP Lender's Collateral.

11.  Therefore, for the avoidance of doubt, the Foundation seeks clarification and objects to the Motion to the extent that the Orchestra seeks to grant the DIP Lender a security interest in the Undisbursed Funds, and requests that any order granting the Motion clearly specify that the Undisbursed Funds provided to the Orchestra by the Foundation under the Grant Agreement are not a part of the DIP Lender's Collateral and that the DIP Lender has no security interest or liens in the Undisbursed Funds.

---

"do not belong to the Debtors." *See* Cash Management Motion at ¶ 10. Exhibit C to the Cash Management Motion includes specific reference to a fund called the "Philadelphia Orchestra Association – Annenberg Pool" *See* Cash Management Motion at Ex. C. Thus, the Debtors themselves have admitted that the Undisbursed Funds are not property of their estates.

## **CONCLUSION**

WHEREFORE, the Foundation hereby respectfully requests that the Court, in any order granting the Motion, clarify that the Undisbursed Funds are not a part of the Collateral and that the DIP Lender does not have any security interests or liens in the Undisbursed Funds; and grant such other and further relief as may be just and proper.

Dated:   October 13, 2011
         New York, New York

Respectfully submitted,

/s/ Malani J. Cademartori
Malani J. Cademartori, Esq. (*pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY  10112
Telephone: 212-653-8700
Facsimile: 212-653-8701
E-mail: mcademartori@sheppardmullin.com

- and –

David C. Ulich, Esq. (*pro hac vice*)
Alan M. Feld, Esq. (*pro hac vice*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701
E-mail: dulich@sheppardmullin.com
        afeld@sheppardmullin.com

*Counsel for The Annenberg Foundation*

**Exhibit A**
**Grant Agreement**

## PHILADELPHIA ORCHESTRA ENDOWMENT GRANT

This Agreement made this 15th day of September, 2003, ("Agreement") by and between THE ANNENBERG FOUNDATION, a Pennsylvania non-profit corporation, with an address at St. Davids Center, Suite A-200, 150 Radnor-Chester Road, St. Davids, PA 19087 ("Foundation") and THE PHILADELPHIA ORCHESTRA ASSOCIATION, a Pennsylvania non-profit corporation, with an address at 260 South Broad Street, 16th floor, Philadelphia, PA 19102 ("Orchestra").

### BACKGROUND

In response to proposals to the Foundation by the Orchestra, which are attached as Exhibits A and B, the Foundation wishes to make a grant to the Orchestra to establish four funds within the Orchestra Endowment, to be known, respectively, as:

(a) the "Annenberg Fund for Education";

(b) the "Annenberg Fund for Touring";

(c) the "Annenberg Fund for Artistic Endeavors";

(d) the "Annenberg Fund for Media and Technology" and

collectively referred to as the "Funds". In making this grant, the Foundation is relying, in part, on Exhibits A and B, which are incorporated herein by reference and made a part hereof, with any variation between the terms of this Agreement and Exhibits A and B being controlled by the terms of this Agreement. Subject to the terms and conditions hereof, the Foundation is willing to endow the Funds and the Orchestra is willing to accept the same.

NOW, THEREFORE, with the intent to be legally bound hereby, the Foundation and the Orchestra agree as follows:

503023_5

1. The total grant from the Foundation to the Orchestra is Fifty Million Dollars ($50,000,000), with an initial payment of Ten Million Dollars ($10,000,000) payable on October 15, 2003, and with the balance of Forty Million Dollars ($40,000,000) payable in annual Ten Million Dollar ($10,000,000) installments on October 15, 2004 and on October 15th of each subsequent year through 2007 (hereinafter the "Endowment Grants").

2. The Orchestra shall establish four funds within the Orchestra's Endowment Grants as follows:

    (a) Fifteen Million Dollars ($15,000,000) shall establish the Annenberg Fund for Education;

    (b) Fifteen Million Dollars ($15,000,000) shall establish the Annenberg Fund for Touring;

    (c) Ten Million Dollars ($10,000,000) shall establish the Annenberg Fund for Artistic Endeavors; and

    (d) Ten Million Dollars ($10,000,000) shall establish the Annenberg Fund for Media and Technology.

3. Each Fund shall be kept as a permanent endowment fund of the Orchestra.

4. Each annual Ten Million Dollar ($10,000,000) Endowment Grant shall be allocated pro rata as follows:

    (a) Three Million Dollars ($3,000,000) to the Annenberg Fund for Education;

    (b) Three Million Dollars ($3,000,000) to the Annenberg Fund for Touring;

    (c) Two Million Dollars ($2,000,000) to the Annenberg Fund for Artistic Endeavors; and

  (d)  Two Million Dollars ($2,000,000) to the Annenberg Fund for Media and Technology;

5. The "Spendable Income", as hereinafter defined in Paragraph 6, from each of the Funds shall be used in perpetuity to pay for the following Orchestra expenses:

  (a) <u>Annenberg Fund for Education</u>: Music education activities, which increase access, exposure and understanding of symphonic music among children and adults of the Philadelphia region, including, but not limited to:

    i. Educational concerts by the Orchestra in the Kimmel Center and the Academy of Music, including establishing a week of free education concerts for students that will be held each year at the Academy of Music prior to the annual Anniversary Concert and Ball;

    ii. Creating innovative community partnership programs to ensure that the Orchestra serves Philadelphia and the region with more neighborhood concerts free to the public, particularly children;

    iii. In-School demonstrations on a regular basis by members of the Orchestra;

    iv. Creating and distributing curriculum-based music education materials;

    v. Introductory music learning experiences for young children (e.g., "Sound All Around");

    vi. Hiring an Artistic Director and/or Music Animator for educational activities;

503023_5    3

      vii.    Dividing family concert programs into two groups (4-7 year olds and 8-11 year olds);

      viii.    Adding family concerts on Sundays;

      ix.    Developing Orchestra exhibits at the Please Touch Museum;

      x.    Working with school systems to insure incorporation of music into the curriculum;

      xi.    Organizing and training musicians as in-school music "ambassadors";

      xii.    Making student concerts available free of charge;

      xiii.    Creating orchestral training programs with the Curtis Institute (so students get playing experience with the Orchestra); and

      xiv.    Creating conductor training programs (with the Curtis Institute and the Sounds of Learning Initiative), so Christoph Eschenbach and his successors can mentor young conductors.

(b)    <u>Annenberg Fund for Touring</u>: Performances outside the Philadelphia region, which ensure the world-class reputation of the Orchestra, including, but not limited to:

      i.    New York City (e.g., Carnegie Hall);

      ii.    Washington, D.C. (e.g., Kennedy Center);

      iii.    Commonwealth of Pennsylvania (e.g., Harrisburg, Pittsburgh);

      iv.    Domestic Tours of the United States of America; and

      v.    International Tours (e.g., Europe, Asia, South America).

(c) <u>Annenberg Fund for Artistic Endeavors</u>: The Music Director's special artistic initiatives, including, but not limited to:

　　i. Attracting and retaining the finest conductors, soloists, and musicians;

　　ii. Commissioning new works;

　　iii. Performing opera, both in concert-form in the Kimmel Center and fully-staged in the Academy of Music, with the Orchestra in the pit;

　　iv. Inter-disciplinary festivals with other visual and performing arts groups; and

　　v. Taking artistic risks, experimenting with new programs and offerings.

(d) <u>Annenberg Fund for Media and Technology</u>: Electronic media activities, which bring the excitement of the concert hall experience to people around the world, including, but not limited to:

　　i. Audio recordings (e.g., CDs and DVDs);

　　ii. Radio and television broadcasts;

　　iii. Internet "streaming" and "downloading"; and

　　iv. New technologies, as may be developed in the future.

6. The term "Spendable Income" as used herein, shall mean the amount made available for annual expenditure from each Fund in accordance with the Orchestra's draw policy under its Endowment Fund Investment Policy ("Draw Policy"), as determined from time to time by the Board of Directors of the

Orchestra (the current Draw Policy attached as Exhibit C is 6.25%), provided, however, that the Draw Policy applicable to the Funds through fiscal year ending June 30, 2008 shall not exceed 6.25% and for each fiscal year thereafter shall not exceed 5.5%. The Orchestra represents and warrants that it shall not, directly or indirectly, under any circumstances, use any of the Spendable Income from the Funds for or against any union matter of any kind or any matters related thereto.

7. If, in any year, the Orchestra does not incur expenses for any activities supported by one or more of the Funds equal to or greater than the Spendable Income, the portion of the Spendable Income from that Fund which was not expended may be carried forward and treated as additional Spendable Income in the next succeeding year, or applied against the Orchestra's expenses for activities supported by one or more of the other Funds, provided, however with respect to the latter, the Orchestra's Board of Directors shall make a recommendation to, and must receive written authorization from, the Foundation regarding the redesignation of any Spendable Income not fully expended in any year from any Fund for the stipulated activity.

8. The Orchestra shall not commingle the Funds with any other funds of the Orchestra, except for investment purposes. The Funds shall always be referred to in the books and records of the Orchestra as the "Annenberg Endowment Funds."

9. The Funds shall not be subject to any administrative or overhead charges of any kind by the Orchestra or any other individual or entity, except for third party investment management fees, such fees being permissable if equal to or less than the investment management fees paid by the Orchestra's other endowment grants.

10. The Orchestra agrees that it will make a strong good faith effort to raise Fifty Million Dollars ($50,000,000) as an addition to its endowment by June 30, 2008. Reports on the progress of the fundraising campaign should be submitted to the Foundation by September 30th of each year, beginning September 30, 2004 and ending September 30, 2008, or until such time as the fundraising campaign has successfully concluded.

11. The Orchestra shall maintain for each separate Fund a detailed record of receipts and disbursements. A narrative report on the use of each of the Funds, including accomplishments, issues and challenges, and future plans, along with an unaudited financial report pertaining to each Fund, shall be submitted to the Foundation by September 30th of each year beginning September 30, 2004, in both hard copy and electronic version. The electronic version of all reports should be forwarded to reports@annenbergfoundation.org with the subject heading "Four Endowment Funds at the Philadelphia Orchestra Association (04-088)." The following financial reports will also be made available annually to the Foundation within thirty (30) days of their availability:

(a) Audited financial statements of the Orchestra;

(b) Certified summary of the Orchestra's operating performance; and

(c) Board approved annual operating budget of the Orchestra, which must be consistent with the terms of this Agreement.

Reports submitted to the Foundation must be satisfactory to the Foundation and audited financial statements must be prepared by recognized professionals in the field. The next Endowment Grant payment is contingent, among other things,

503023_5                                    7

upon receipt by the Foundation of the reports required in this paragraph and paragraph 10.

12. The Orchestra represents that the terms of this Agreement are not inconsistent with any other agreement executed or to be executed by the Orchestra with any person or entity.

13. The Endowment Grants will be made based upon the assumption that the Orchestra's annual operating budget for fiscal years beginning September 1, 2005, and thereafter, are "balanced" as defined herein. The annual operating budget for each fiscal year will be considered "balanced" only if, based upon generally accepted accounting principles, it reflects that the total of (1) all operating revenues and (2) Spendable Income from unrestricted, temporarily restricted and permanently restricted endowment funds, equals or exceeds operating expenses (excluding depreciation). For this purpose, any surplus from operations in any fiscal year may be carried to the next succeeding year in determining whether the Orchestra's operating budget is balanced. In the event, in any fiscal year, the Orchestra experiences an actual operating deficit of greater than one and one-half percent (1 ½%) of the actual operating expenses, the Foundation reserves the right to consider the Orchestra in material breach as provided in paragraph 22 (h) of this Agreement. For purposes of the preceding sentence, an actual operating deficit for any given fiscal year shall be defined as the excess of the actual operating expenses (excluding depreciation) over the total of (1) all operating revenues and (2) Spendable Income from unrestricted, temporarily restricted and

503023_5                                         8

permanently restricted endowment funds. The above financial reports shall exclude all revenues and expenses of the Academy of Music of Philadelphia, Inc.

14. The Orchestra will recognize the Funds in perpetuity in the program book distributed at every performance of the Orchestra as well as other Orchestra printed materials, as appropriate.

15. If the Orchestra should liquidate or the Orchestra members are no longer performing in Philadelphia as a group on a regular multiple performance basis, the then balance of the Funds shall be returned in full to the Foundation.

16. All notices, demands, waivers, and other communications required or permitted by this Agreement shall be in writing and should refer to the Foundation's commitment number 04-088. All notices, demands, waivers and other communications shall be deemed to have been given if and when personally delivered or sent by United States certified mail, postage prepaid, to the following parties and addresses (or to such other address as a party may hereafter designate for itself by notice to the other party):

a) If to the Foundation:

> Dr. Gail Levin, Executive Director
> The Annenberg Foundation
> St. Davids Center, Suite A-200
> 150 Radnor-Chester Road
> St. Davids, PA 19087
>
> Cc: Dilworth Paxson LLP
> Att: William J. Henrich, Jr., Esq.
> and John R. Latourette, Jr., Esq.
> 3200 Mellon Bank Center
> 1735 Market Street
> Philadelphia, PA  19103

    b)     If to the Orchestra:

> Mr. Joseph H. Kluger, President
> The Philadelphia Orchestra Association
> 260 South Broad Street, 16th floor
> Philadelphia, PA 19102

17. Without limitation, no third party nor any of the Orchestra's creditors or any trustee in bankruptcy shall have any right or claim to the Funds or the proceeds or any part thereof by any purported assignments or transfer at any time. No other party may rely upon the terms and conditions of these Funds.

18. The Orchestra recognizes that the Endowment Grants are being made to it solely for the purposes set forth herein.

19. Nothing herein shall be considered to create a partnership or joint venture relationship between the Foundation and the Orchestra and the Orchestra shall, at all times, be and remain solely responsible for all of its debts and obligations.

20. This Endowment Grant including all of its terms and conditions, shall remain strictly confidential until such time as the Foundation and the Orchestra mutually agree as to the appropriate disclosure.

21. As a cornerstone in the cultural life of the region, the Orchestra represents that it shall not be content to merely maintain its existing strengths and the quality of its performances, but shall focus on striving to attain the highest standards of excellence in every indicia of achievement. The Orchestra shall broaden its artistic view and exhibit the regional, national and international leadership necessary to encompass a cosmopolitan perspective that embraces growth,

innovation and adaptation to the needs of both social institutions and the needs of the populace.

22. The Foundation, at its sole discretion, may revoke this Agreement, cancel all unpaid installments, and require the return of the balance of the Funds to the Foundation if at any time any of the following occurs:

(a) The Orchestra becomes insolvent;

(b) The Orchestra fails to meet on a current basis any of its material debts or obligations;

(c) The taking of any material property of the Orchestra by official levy or execution;

(d) The filing by the Orchestra for an appointment of a trustee, receiver or liquidator;

(e) The filing by the Orchestra of a voluntary petition in bankruptcy;

(f) The filing by an individual or entity of an involuntary petition in bankruptcy against the Orchestra;

(g) The loss of the Orchestra's tax-exempt status as a Section 501(c)(3) (or successor provision thereto) entity as defined by the Internal Revenue Code (the Orchestra must immediately notify the Foundation of any change in its tax exempt status); or

(h) The material breach by the Orchestra of any of the terms and limitations of this Agreement, which breach remains uncorrected for a period of sixty (60) days after receipt by the Orchestra of a written notice from the Foundation which sets forth the alleged breach.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

THE ANNENBERG FOUNDATION

By: *[signature]*
Leonore Annenberg, President and Chairman of the Board

THE PHILADELPHIA ORCHESTRA ASSOCIATION

By: *[signature]*
Joseph H. Kluger, President

By: *[signature]*
Richard L. Smoot, Chairman of the Board